UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., | Case No. 1:24-cv-00788-JLT-HBK |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT[1] |
| v. | |
| CHAHAL ROADLINES INC, et. al., | (Doc. No. 11) |
| Defendants. | 14 DAY OBJECTION PERIOD |

Pending before the Court is Plaintiff's Motion for Default Judgment filed pursuant to Federal Rule of Civil Procedure 55(b)(1) on October 9, 2024. (Doc. No. 11, "Motion"). Plaintiff submits declarations with exhibits in support of its Motion. (Doc. Nos. 12, 12-1 through 12-13, 13). Defendants have not answered or responded to the Complaint, nor have Defendants filed any opposition or taken any action in this case. Having considered the moving papers, declarations, attached exhibits, and applicable law, the undersigned recommends that the district court grant Plaintiff's Motion for Default Judgment.

////

---

[1] This Motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(19) (E.D. Cal. 2019).  The Court previously found the Motion suitable for decision without argument. (Doc. No.14).

# I. BACKGROUND

On July 8, 2024, Plaintiff BMO Bank, f/k/a BMO Harris Bank N.A. ("BMO") filed a complaint against Defendants Chahal Roadlines, Inc. ("Chahal"), a California corporation, and Malkit Singh, an individual resident and citizen of California. ("Singh"). (Doc. No. 1, "Complaint"). Plaintiff is a national association with its main office located in Chicago, Illinois, and was in the business of providing financing to persons or entities engaged in commercial trucking operations. (*Id*., ¶¶ 4,8). Defendant Chahal is a California corporation with its principal place of business located in Fresno, California. (*Id*., ¶ 5). Defendant Singh is the owner, sole director, and CEO, Secretary and CFO of Chahal, and a citizen of California who resides in Fresno, California. (*Id*., ¶¶ 6,7). The Complaint alleges breach of contract claims against both Chahal and Singh, and seeks monetary damages, specific performance, and injunctive relief. (*Id*. at 7-12). The Complaint alleges the following facts.

Plaintiff and Defendant Chahal entered into five distinct Loan and Security Agreements, Agreements 7001, 22001, 52001, 5001, and 1001 (collectively "Agreements") whereby Plaintiff agreed to finance on behalf of Defendant Chahal the purchase of seven vehicles for use in Chahal's commercial trucking business. (*Id*. at 2-4). A copy of each Agreement is attached to and incorporated into the Complaint as Exhibits 1-5 (*Id.* at 13-44). As consideration, Defendant Chahal granted Plaintiff a first-priority security interest in each of the seven vehicles. (*Id*., ¶ 15). Plaintiff perfected its security interest in the vehicles by recording its lien on the Certificate of Title for each vehicle. *(Id*., ¶16, Exhibit 7 at 51- 64).

A. <u>Loan Agreements and the Security Interests</u>

    a. <u>Agreement 7001</u>

Loan and Security Agreement 7001 ("Agreement 7001") was executed on or about November 12, 2020. (*Id*. at 2 ¶ 9). Agreement 7001 provided for the purchase of two 2016 Utility Refrigerated Vans, Vehicle ID Nos. 1UYVS2530GU539205 and 1UYVS2535GU539037 ("7001 Vehicles"), in the amount of $80,789.50, including interest, pursuant to specified terms and conditions. (*Id*., ¶¶ 9, 15). A copy of Agreement 7001 is attached to the Complaint as Exhibit 1. (*Id.* at 13-19).

b.  <u>Agreement 22001</u>

Loan and Security Agreement 22001 ("Agreement 22001") was executed on or about January 18, 2021. (*Id*. at 3 ¶ 10). Agreement 22001 provided for the purchase of a 2021 Freightliner Cascadia, Vehicle ID No. 3AKJHHDR9MSNA1289 ("22001 Vehicle"), in the amount of $143,011.80, including interest, pursuant to specified terms and conditions. (*Id*., ¶¶ 10, 15). A copy of Agreement 22001 is attached to the Complaint as Exhibit 2. (*Id.* at 20-25).

c.  <u>Agreement 52001</u>

Loan and Security Agreement 52001 ("Agreement 52001") was executed on or about April 2, 2021. (*Id*. at 3 ¶ 11). Agreement 52001 provided for the purchase of two 2017 Utility Refrigerated Vans, Vehicle ID Nos. 1UYVS2533HM875402 and 1UYVS2534HU873593 ("52001 Vehicles"), in the amount of $98,344.96, including interest, pursuant to specified terms and conditions. (*Id*., ¶¶ 11, 15). A copy of Agreement 52001 is attached to the Complaint as Exhibit 3. (*Id.* at 27-32).

d.  <u>Agreement 5001</u>

Loan and Security Agreement 5001 ("Agreement 5001") was executed on or about May 12, 2021. (*Id*. at 3 ¶ 12). Agreement 5001 provided for the purchase of a 2017 Utility Refrigerated Van, Vehicle ID No. 1UYVS2530HU873767 ("5001 Vehicle"), in the amount of $48,832.32, including interest, pursuant to specified terms and conditions. (*Id*., ¶¶ 12, 15). A copy of Agreement 5001 is attached to the Complaint as Exhibit 4. (*Id.* at 33-38).

e.  <u>Agreement 1001</u>

Loan and Security Agreement 1001 ("Agreement 1001") was executed on or about May 21, 2021. (*Id*. at 3 ¶ 13). Agreement 1001 provided for the purchase of a 2017 Utility Refrigerated Van, Vehicle ID No. 1UYVS2533HU873505 ("1001 Vehicle"), in the amount of $48,714.72, including interest, pursuant to specified terms and conditions. (*Id*., ¶¶ 13, 15). A copy of Agreement 1001 is attached to the Complaint as Exhibit 5. (*Id.* at 40-44).

B.  <u>The Guaranties</u>

In connection with Agreements 7001, 22001, 52001, 5001, and 1001 (collectively "Agreements") Defendant Singh executed Continuing Guaranties on November 12, 2020, January

3

18, 2021, April 2, 2021, May 12, 2021, and May 21, 2021, respectively. (*Id*., ¶ 14). By signing each Continuing Guaranty (the "Guaranties"), Defendant Singh guaranteed the full and timely performance of all of Defendant Chahal's present and future liabilities to Plaintiff. (*Id.*). Copies of the Guaranties are attached and incorporated into the Complaint as Exhibit 6. (*Id.* at 45-50).

### C. Default and Calculation of Judgment

Plaintiff alleges Defendants are in default of the Agreements and Guaranties (collectively "Loan Documents") for their failure to pay the amounts due, beginning with the payments due on December 1, 2023, and all payments due thereafter. (*Id*., ¶ 18). As a result of the default, Plaintiff has accelerated the amounts due consistent with the terms of the Loan Documents.

In its current Motion, Plaintiff asserts the following amounts on the Loan Documents are due, which includes principal plus interest, repossession charges, and other fees:

    a. Agreement 7001
        i. Principal: $27,368.32;
        ii. Interest and Fees: $3,542.58 (calculated through September 25, 2024), plus $13.68 per day thereafter;
        iii. Total: $30,910.90

    b. Agreement 22001
        i. Principal: $63,742.37;
        ii. Interest and Fees: $9,628.88 (calculated through September 25, 2024), plus $31.87 per day thereafter;
        iii. Total: $73,371.25

    c. Agreement 52001
        i. Principal: $45,617.73;
        ii. Interest and Fees: $5,686.59 (calculated through September 25, 2024), plus $22.81 per day thereafter;
        iii. Total: $51,304.32

    d. Agreement 5001
        i. Principal: 20,321.94;

          ii.   Interest and Fees: $3,313.52 (calculated through September 25, 2024),

              plus $10.16 per day thereafter;

         iii.   Total: $23,635.46

    e.   Agreement 1001

         i.   Principal: $20,271.82;

         ii.   Interest and Fees: $3,807.18 (calculated through September 25, 2024),

             plus $10.14 per day thereafter;

         iii.   Repossession fees: $500.00

         iv.   Total: $24,079.00

    f.   Total from the Agreements: $203,300.93

(Doc. No. 11 at 9-10).

In support, Plaintiff points to the Loan Documents, which provide that Defendants must pay all expenses resulting from retaking, holding, preparing for sale, and selling the Vehicles upon default. (Doc. No. 1, ¶ 25, Exhibits 1-5). Additionally, Defendants are obligated to pay the attorney's fees and costs incurred by Plaintiff in the enforcement of its rights under the Agreement. (*Id*., ¶ 26). Plaintiff noticed Defendants of their defaults and of Plaintiff's election to accelerate the loans evidenced by the Agreements by letter dated June 3, 2024. (*Id*., ¶ 27, Exhibit 8). Plaintiff demanded Defendants to pay the amounts due and surrender the subject Vehicles. (*Id*.). Defendants did not pay the amounts due and owing under the Loan Documents, and Plaintiff has been unable to recover possession of the Vehicles. (*Id*., ¶¶ 28, 30). Upon repossession, Plaintiff intends to resell the subject Vehicles in a commercially reasonably manner and will provide credit of the net proceeds to Defendants. (Doc. No. 11 at 15).

Plaintiff served Defendants Chahal and Singh with Plaintiff's Complaint on August 21, 2024 and August 10, 2024 respectively. (Doc. Nos. 6, 7). After Defendants failed to appear or answer, Plaintiff requested and obtained a clerk's entry of default under Federal Rule of Civil Procedure 55(a) on September 24, 2024. (Doc. Nos. 8, 9). On October 9, 2024, Plaintiff moved for default judgment on its breach of contract claim in the amount of $208,308.52 plus interest and expenses against Defendants. (Doc. No. 11 at 14).

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 55(b)(2) allows the court to enter judgment against a party following the clerk of court's entry of default under 55(a). The court cannot enter default judgment if the defendants were not properly served. *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992). If the court determines service was proper, the court must undertake an analysis applying the "*Eitel*" factors enumerated in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) before entering a default judgment. Specifically, the court considers the following factors: (1) the potential prejudice to the plaintiff, (2) the underlying claim's merits and sufficiency, (3) the amount of money at stake, (4) the possibility of a factual dispute, (5) whether the default resulted from excusable neglect, and (6) the court's overriding preference to issue decisions on the merits. (*Id*).

After the clerk enters a default, the court shall accept "as true all factual allegations in the complaint, except those as to the amount of damages." *Yoon Chul Yoo v. Arnold*, 615 F. App'x. 868, 870 (9th Cir. 2015); Fed. R. Civ. P. 8(b)(6). Allegations about "the amount of damages must be proven." *Strojnik v. JW World Enterprises, Inc. Best W. Bakersfield N*., 2021 WL 22137, at *1 (E.D. Cal. Jan. 4, 2021). The court also does not accept facts that are not well pled or statements that constitute conclusions of law. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012). Ultimately, the decision of whether to grant a default judgment lies within the discretion of the court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

## III. ANALYSIS

A. <u>Jurisdiction</u>

The Complaint invoked this Court's jurisdiction under 28 U.S.C. § 1132(a)(2). (Doc. No. 1, ¶ 2). Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different States . . ." 28 U.S.C. § 1332(a)(1). The amount in controversy "encompasses all relief a court may grant . . . if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018). Additionally, it represents "the *maximum* recovery the plaintiff could reasonably

recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). The amount in controversy is calculated based on the well-pleaded allegations in the complaint. *See Chavez*, 888 F.3d at 416. Here, the amount in controversy is satisfied as the Complaint seeks monetary damages of $177,322.18 in principle alone. (Doc. No. 1, ¶ 19).

Regarding the diversity prong, national banking associations are "deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. For purposes of diversity, a bank is "located" in the state designated in its articles of association as its main office. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Under § 134, a national banking association is a citizen only of the state in which its main office is located. *See Rouse v. Wachovia Mortg.*, FSB, 747 F.3d 707, 709 (9th Cir. 2014). Plaintiff states its main office in the articles of association is in Chicago, Illinois. (Doc. No. 1, ¶ 4). Therefore, for purposes of diversity jurisdiction, Plaintiff is located in Illinois and is a citizen of Illinois. *See Wachovia Bank*, 546 U.S. at 318.

Corporations are deemed to be citizens of the state by which it has been incorporated and of the State where it has its principal place of business. *Okamoto v. Bank W. Corp.*, 115 F. App'x 410, 410 (9th Cir. 2004). Individuals are deemed to be citizens of the state in which they are domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). According to the Complaint, Defendant Chahal "is a corporation organized under the laws of the state of California with its principal place of business located at 5236 N. Valentine Avenue #103, Fresno, California 93711," and Defendant Singh "is a citizen of the state of California residing at 5236 N. Valentine Avenue #103, Fresno, California 93711." (Doc. No. 1, ¶ 5, 6).

The Court finds Plaintiff has established that the amount in controversy exceeds the $75,000 threshold as well as complete diversity between the parties named in the lawsuit to satisfy that this Court that has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Additionally, the Court has personal and general jurisdiction over the Defendant Singh given he is domiciled in Fresno, California. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domestic domicile[.]"). The Court has personal and general

1  jurisdiction over Defendant Chahal given that its principal place of business is Fresno, California.
2  *Id.* (exercise of general personal jurisdiction over a corporation is appropriate in its principal
3  place of business, which is "fairly regarded as at home.").

B.  <u>Defendants Were Properly Served with Process</u>

Federal Rule of Civil Procedure 4 sets forth the requirements for service within a judicial district of the United States. Service is effectuated under Federal Rule of Civil Procedure 4(e) by "following state law for serving a summons . . . in the state where the district court is located or where service is made," or by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1)-(2). Under California law, service of the summons and complaint is permitted by either personal service or by leaving the papers with a "competent member of the household or a person apparently in charge of his or her office [or] place of business," among other methods. Cal. Code Civ. P. § 415.10-20. All methods require that the service be handled by an individual who is not a party to the action. (*Id.*).

Plaintiff submits sworn affidavits of service of process that indicate that Defendants were served a copy of the summons and complaint via substituted service in compliance with California law. Specifically, after three unsuccessful attempts to effectuate personal service upon Defendant Chahal, a registered process server left the summons and complaint on August 21, 2024 for Defendant Chahal at the home or usual place of business of Singh, as CEO of Chahal, located at 5811 W Cromwell Ave, Fresno, California 93722. (Doc. No. 6). The service papers were left with a "employee/co-occupant" named Raman Preet, who was described as a male between 35-45 years of age, and who was informed of the contents thereof. (*Id*. at 1). Similarly, after three unsuccessful attempts to effectuate personal service upon Defendant Singh, a registered process server left the summons and complaint on August 10, 2024 for Defendant Singh at the home or usual place of business of Singh located at 5811 W Cromwell Ave, Fresno, California 93722. (Doc. No. 7). The service papers left with "Jane Doe-Co-occupant," who is described as a 45-year-old female, and who was informed of the contents thereof. (*Id*. at 1). Additionally, on August 21, 2024 and August 14, 2024, copies of the summons and complaint

along with the initial pleadings were also mailed through the United States Postal Service via First-Class, postage prepaid to Defendants Singh and Chahal respectively at the same address. (Doc. No. 6 at 5, Doc. No. 7 at 3).

Accordingly, the Court finds that Plaintiff have complied with Rule 4. After Defendants failed to file a response to the Complaint, Plaintiff moved for and was granted a clerk's entry of default on September 24, 2024 against Defendants. (Doc. No. 9).

### C. Application of the Six *Eitel* Factors

#### 1. Prejudice to Plaintiff

The Court first considers whether Plaintiff will suffer prejudice if a default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, at 1177 (C.D. Cal. 2002). When a defendant neglects to respond to a complaint, a plaintiff lacks means to recover beyond a default judgment. *True Religion Apparel, Inc. v. Jet 2A*, 2009 WL 10671791, at *3 (C.D. Cal. Feb. 11, 2009). Here, the Court finds Plaintiff would be prejudiced if default judgment was not granted because, absent entry of a default judgment, Plaintiff will be without recourse against Defendants, given their unwillingness to participate in the action or pay the amounts due on the contract. (Doc. No. 11, ¶ 1). The "[p]otential prejudice to the plaintiff militates in favor of granting default judgment." *See Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014). The first *Eitel* factor therefore weighs in favor of default judgment.

#### 2. The Underlying Claim's Merits and Sufficiency

The court next weighs the merits and sufficiency of Plaintiff's Complaint. Default judgment will only be granted if Plaintiff's Complaint states a claim that supports the desired relief. *Wells Fargo Equip. Fin., Inc. v. Virk Sys., Inc.*, 2021 WL 347408, at *2 (E.D. Cal. Feb. 2, 2021). Plaintiff asserts a breach of contract action as its claim for relief. (*See generally* Doc. No. 1). Under California law, to prevail on a breach of contract claim, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1399 (1990).

The Court finds Plaintiff has established each of these elements. Plaintiff entered into five Loan and Security Agreements with Defendant Chahal, and Continuing Guaranties for each of the

five Agreements with Defendant Singh. (Doc. No. 1, ¶¶ 9-14). Plaintiff fully performed its obligations under the Loan Documents by financing Defendant Chahal's purchase of the subject Vehicles. (*Id*., ¶ 32). Titles for each of the subject Vehicles are appended to the Complaint and reflect Defendant Chahal as the "Owner" and Plaintiff as the "Lienholder." (*Id*. at 51-64, Exhibit 7). Defendants breached the terms of the Loan Documents by defaulting on their payments. (*Id.,* ¶ 18). Plaintiff's prayer for relief also sets forth its claim for contractual monetary damages, including attorney's fees, interest, and costs. (*Id., ¶* 26). Thus, the second and third *Eitel* factors support entry of default judgment.

### 3.  The Amount of Money at Stake

Plaintiff seeks a default judgment of $208,308.52, which includes $4,387.50 in attorney's fees and $620.09 in costs. (Doc. No. 11 at 14). Default judgment is "is disfavored where large amounts of money are involved." *Christofferson v. All Pure Pool Serv. Of Cent. California, Inc.*, 2020 WL 3249323, at *19 (E.D. Cal. June 16, 2020), *report and recommendation adopted sub nom*; *Christofferson, v. All Pure Pool Serv. Of Cent. California, Inc*, WL 3819413 (E.D. Cal. July 8, 2020).

The bulk of Plaintiff's contractual damages consists of the principal amount due from the purchase prices of the subject Vehicles, $177,322.18. (Doc. No. 11 at 14). As discussed more fully below, Plaintiff submits evidence in support of its damages claim. The Court does not find this amount to be excessive as it is based upon Defendants' obligations under the terms of the Loan Documents. As such, the Court finds the fourth *Eitel* factor weighs in favor of granting default judgment.

### 4.  The Possibility of a Factual Dispute

The Clerk of Court's entry of default requires the Court to accept Plaintiff's well-pled factual allegations as true. Despite being properly served, Defendants did not appear, answer, or otherwise respond. Thus, the only facts before the court are those presented by Plaintiff in the Complaint, which are well-pled and must be accepted as true. There is accordingly no factual dispute. *United Specialty Insurance Co. v. Saleh*, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016). Thus, the fourth *Eitel* factor does not preclude entry of a default judgment.

5. Whether the Default Resulted from Excusable Neglect

Defendants were properly served yet have not appeared since service was effectuated. When service is proper it suggests there was not excusable neglect. *USA Truck, Inc. v. Jugan Express Inc.*, 2020 WL 2128387, at *2 (E.D. Cal. May 5, 2020), *report and recommendation adopted*, 2020 WL 3451580 (E.D. Cal. June 24, 2020). The Court therefore finds this fifth *Eitel* factor weighs in favor of default judgment.

6. The Court's Overriding Preference to Issue Decisions on the Merits

*Eitel* emphasizes the general rule is that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. However, the policy favoring decisions on the merit does not preclude entering default judgment when a defendant fails to appear because a decision on the merits is not possible. *Arroyo*, 2019 WL 4877573, at *11 (E.D. Cal. Oct. 3, 2019). Therefore, the Court finds the sixth *Eitel* factor does onto preclude entry of default judgment.

In summary, the Court finds each of the above *Eitel* factors weigh in favor of default judgment and recommends default judgment be entered in favor of Plaintiff. Having recommended default, the Court now turns the appropriate measure of damages.

D. Relief Requested

1. Contractual Damages

The Loan Documents provide that in the event of default, all indebtedness becomes immediately due and payable. (Doc. No. 11, ¶ 11, *See e.g.* Exhibit 1, ¶ 5.2).[2] Further, Plaintiff is entitled to take possession of and dispose of the equipment and to have the debtor pay all interest and expenses incurred, including reasonable attorney's fees associated with the repossession and disposition. (Doc. No. 11, ¶ 17, *See e.g.* Exhibit 1, ¶¶ 5.2, 5.3). According to the date of default under the Loan Documents, the total principal amount due and owing after acceleration is $177,322.18. (Doc. No. 11, ¶ 11). Calculated from the respective dates of default, the total

---

[2] The five Agreements contain identical terms and conditions. Thus, the undersigned cites to Exhibit 1, but confirms the same terms and conditions are contained in the four other Agreements attached as Exhibits 2-5.

amount of accrued and unpaid interest, late charges, and other fees due and owing under the Loan Documents is an amount totaling not less than $25,978.75 (*Id*.).  Additionally, Plaintiff is entitled to daily interest under the Agreements until the date when final judgment is entered.  In addition, under the Loan Documents, upon default, Defendants are obligated to pay all expense of retaking, holding, preparing for sale, and selling the Vehicles. (*Id*., ¶17).  To date Plaintiff has incurred $500.00 for repossession costs under Agreement 1001 but has not been able to recover any of the Vehicles. (*Id*., ¶¶ 17, 22).  Calculated as of September 25, 2024,[3] the amount due and owing under the Loan Documents, not including attorney's fees and costs for this Motion, is an amount not less than $203,300.93. (*Id*. at 14).  These requested amounts are supported by declaration. (Doc. No. 12).  The Loan Documents and declaration constitute sufficient proof that Plaintiff has sustained damages for the breaches under the Agreements and Defendants have not appeared to oppose the request.  The undersigned accordingly recommends judgment in the amount $203,300.93, plus post-judgment interest and attorney's fees and costs, jointly and severally against Defendants.

2.  Attorney's Fees and Costs

Plaintiff also seeks $4,387.50 in attorney's fees and $620.09 in costs under the Agreements for bringing this Motion.  (Doc. No. 11, ¶¶ 6-7). "A federal court sitting in diversity applies the law of the forum state regarding an award of attorney's fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).  California law recognizes contractual provisions allowing the collection of reasonable attorney's fees. Cal. Civ. Proc. Code § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."); *Gil v. Mansano*, 121 Cal. App. 4th 739, 742-43 (2004).  Under the Loan Documents, Defendants are obligated to pay the attorney's fees and costs incurred by Plaintiff in the enforcement of its rights, including expenses of filing and prosecuting this action. (Doc. No. 11,

---

[3] The date of the Clerk's entry of default.

¶ 10, Exhibit 1, ¶ 5.2). Thus, Plaintiff is therefore entitled to recovery of its attorney's fees and costs.

To determine a reasonable attorney's fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The undersigned, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).

The relevant community here is the Fresno Division of the Eastern District of California. In the Fresno Division of the Eastern District of California, across a variety of types of litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of experience." *Beard v. Cty. of Stanislaus*, No. 1:21-cv-00841-ADA-SAB, 2023 WL 199200, at *13 (E.D. Cal. Jan. 17, 2023) (collecting cases).

Plaintiff attaches the declaration of Attorney Ken I. Ito in support of their request for attorney fees and costs. (Doc. No. 13). Attorney Ito is an associate at the law offices of Hemar, Rousso & Heald, LLP ("HRH"), who is counsel of record for Plaintiff. (*Id*., ¶1). Attorney Ito has more than 13 years of professional experience, specializes in creditor rights and business and commercial litigation, and has been admitted to practice in California since 2011. (*Id*., ¶ 9). Based on Attorney Ito's experience, the Court finds a rate of $325.00 per hour to be reasonable for his services.

According to the declaration of Attorney Ito and the corresponding invoices for legal services, Attorney Ito expended a total of 10.5 hours of work and billed the Plaintiff $3,412.50 in relation to this matter until September 27, 2024. (Doc. No. 13 at 5). In addition, Attorney Ito declares that "to complete this Motion for Default Judgement, assuming there will be no

requirement to appear at the Motion for Default Judgement, it is anticipated and expected that it will take at least 3 hours at a rate of $325.00, for a total of $975.00." (*Id.*, ¶ 7). Thus, the total amount of attorney's fees would be $4,387.50. (*Id.*, ¶ 8). The Court finds the amount of time billed to be reasonable and not excessive. Further, the Court finds the tasks billed by Attorney Ito as identified on the invoices to be tasks properly performed by an attorney. The undersigned vacated the hearing on the Motion for Default Judgment. (Doc. No. 14). Thus, the estimated additional hours for final preparation of the instant motion that did not include additional time for a hearing need not be reduced.[4] Based on the foregoing, the undersigned finds the amount of $4,387.50 for 13.5 hours of work by Attorney Ito at a rate of $325.00 per hour to be reasonable. In addition to attorney's fees, Plaintiff seeks the recovery of court costs in the amount of $620.09, which consists of the costs for the Court filing fee and service of process. (Doc. No. 13, ¶ 10). The undersigned finds these costs reasonable.

Accordingly, it is ORDERED:

1. Plaintiff shall mail a copy of these Findings and Recommendations to Defendants at each of their last known addresses and file proof of service within fourteen (14) business days of the date of these Findings and Recommendations.

It is further RECOMMENDED:

1. Plaintiff's motion for default judgment (Doc. No. 11) be GRANTED as set forth herein:

    a. Judgment be entered in favor of Plaintiff BMO Bank, N.A. against Defendants Chahal Roadlines, Inc. and Malkit Singh.

    b. Plaintiff be awarded $203,300.93 in monetary damages.

    c. Plaintiff be awarded interest at the contracted rate of each of the following Agreements per day for each day after September 25, 2024 until the entry of final judgment:

        a. Agreement 7001:   $13.68 per day;

---

[4] Notably, the last billing entry is dated September 27, 2024, and the Motion for Default and Declarations in support were not filed until October 9, 2024. (Doc. No. 13 at 12).

      b.   Agreement 22001: $31.87 per day;

      c.   Agreement 52001: $22.81 per day;

      d.   Agreement 5001:   $10.16 per day;

      e.   Agreement 1001:   $10.14 per day.

   d.   Plaintiff be awarded $4,387.50 in attorney's fees and $620.09 in costs.

2.   Plaintiff be awarded possession of the following unrecovered vehicles, and Defendants be directed to return and/or permit Plaintiff to take possession of the subject Vehicles:

| Agreement No. | Description of Vehicle | Identification No. |
|---|---|---|
| 7001 | 2016 Utility Refrigerated Van | 1UYVS2530GU539205 |
| 7001 | 2016 Utility Refrigerated Van | 1UYVS2535GU539037 |
| 22001 | 2021 Freightliner Cascadia | 3AKJHHDR9MSNA1289 |
| 52001 | 2017 Utility Refrigerated Van | 1UYVS2533HM875402 |
| 52001 | 2017 Utility Refrigerated Van | 1UYVS2534HU873593 |
| 5001 | 2017 Utility Refrigerated Van | 1UYVS2530HU873767 |
| 1001 | 2017 Utility Refrigerated Van | 1UYVS2533HU873505 |

3.   Upon sale of the above identified Vehicles in a commercially reasonable manner, the money judgment entered herein be credited with the net sales proceeds.

4.   The Clerk be directed to CLOSE this case.

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party

1 | wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its
2 | CM/ECF document and page number, when possible, or otherwise reference the exhibit with
3 | specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by
4 | the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §
5 | 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the
6 | waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     November 19, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE